**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **GRACE KEENER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-cv-779-STE** |
| | ) | |
| **ANDREW SAUL,** | ) | |
| **Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. _____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

**I.     PROCEDURAL BACKGROUND**

Initially and on reconsideration, the Social Security Administration (SSA) denied Plaintiff's applications for child insurance benefits, disability insurance benefits, and supplemental security income. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision on December 27, 2018. (TR. 15-23). The

Appeals Council denied Plaintiff's request for review. (TR. 1-6). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.     THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 1, 2017, the amended onset date. (TR. 18). The ALJ also determined Plaintiff had not attained the age of twenty-two prior to the amended onset date. (TR. 18). At step two, the ALJ determined that Ms. Keener had the following severe impairments: sensorineural hearing loss in both ears and seronegative rheumatoid arthritis. (TR. 18). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 18-19).

At step four, the ALJ concluded that Ms. Keener retained the residual functional capacity (RFC) to perform light work with the following limitations:

> She can frequently kneel, crouch, and climb ramps and stairs, never climb ladders, ropes, or scaffolds, must avoid concentrated exposures to vibrations, and noise exposure is limited to office setting noise levels or quieter.

(TR. 19). Based on those limitations, the ALJ found Plaintiff could perform past relevant work as a tag and title typist. (TR. 22). The ALJ concluded that Ms. Keener was not disabled based on her ability to perform her past relevant work. (TR. 23).

## III.    STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence in the record and whether the

correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Under the "substantial evidence standard," a court looks to an existing administrative record to determine whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## IV.   ISSUES PRESENTED

On appeal, Ms. Keener alleges the ALJ erred in analyzing Plaintiff's symptoms, by not ordering a consultative examination, and by not properly formulating a hypothetical question to the vocational expert (VE). (ECF No. 24:4-15).

## V.   ANALYSIS

### A.   The ALJ's Symptom Analysis

#### 1. The ALJ's Duty to Evaluate Plaintiff's Subjective Allegations

Social Security Ruling 16-3p provides a two-step framework for the ALJ to consider a claimant's symptoms and determine the extent to which the symptoms are consistent with the evidence in the record. SSR 16-3p, 2016 WL 1119029, at *2. First, the ALJ must make a threshold determination regarding "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to

produce an individual's symptoms, such as pain." *Id.*, at *2. Second, the ALJ will evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit an individual's ability to perform work-related activities. *Id.* At step two, the ALJ will examine the objective medical evidence, the claimant's statements regarding her symptoms, information from medical sources, and "any other relevant evidence" in the record. *Id.*, at *4. SSR 16-3p also directs the ALJ to consider the following seven factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms:

- Daily activities;

- The location, duration, frequency, and intensity of pain or other symptoms;

- Factors that precipitate and aggravate the symptoms;

- The type, dosage, effectiveness, and side effects of any medication;

- Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

- Any measures other than treatment a claimant has used to relieve pain or other symptoms; and

- Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, at *7. Finally, in evaluating a claimant's subjective statements, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. *Id.*, at *9.

### 2. The ALJ Properly Explained Why Plaintiff's Asserted Symptoms Were Inconsistent with the Evidence

Ms. Keener asserts the ALJ was required to "explain and support with substantial evidence which part(s) of [her] testimony he did not believe and why" and was not

allowed to ignore evidence favorable to Plaintiff. (ECF No. 24:8). Plaintiff states that the "ALJ referenced [her] statements but failed to state what evidence he accepted as true and what he rejected." (ECF No. 24:8). The portions of testimony at issue include:

- Plaintiff can only drive short distances if she is having a flare-up, but she can do normal errands on an average day;

- Plaintiff cannot work full time because it "wears [her] out much faster and [she] just need[s] to be able to rest in between;"

- She would not be able to work some days because she cannot get out of bed when she is "really stiff and aching;"

- Her flare-ups last two-to-three hours "a couple of times" per week;

- She has stiffness, joints unable to move, nausea, and aching;

- She has medication side effects including fatigue, decrease in hearing, and light sensitivity; and

- She does not work during the daytime hours due to light sensitivity.

(ECF No. 24:8-9 (citing TR. 35, 37, 39, 41-42, 46)).

The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the medical evidence and other evidence in the record. (TR. 20). As support for this finding, the ALJ cited evidence from the medical record, including reports from Plaintiff to her doctor that her morning stiffness and joint pains were greatly improved, reports that medication resulted in mostly improved morning stiffness and joint pains, and medication she took for various symptoms. (TR. 20-21). The ALJ also addressed evidence which showed Plaintiff consistently had normal muscle strength and tone, normal sensation, normal coordination, normal reflexes, and normal gait. (TR. 21). He further noted Plaintiff's allegations were inconsistent with her activities of daily living. (TR. 21).

The ALJ discussed Plaintiff's testimony and determined it was not consistent with the medical evidence and her activities of daily living. (TR. 20). Although the ALJ did not address Plaintiff's testimony line-by-line to specifically discredit each portion, the Court "can easily ascertain the inconsistencies between [Plaintiff's] accounts and the other evidence when [reading] the ALJ's decision." *Bridges ex rel. R.M.B. v. Comm'r, SSA*, No. 19-7031, 2020 WL 2517962, at *5 (10th Cir. May 18, 2020). Thus, the ALJ did not err in analyzing Plaintiff's subjective complaints.

### 3. Issues Related to Plaintiff's Hands

The ALJ acknowledged Plaintiff's report of pain and swelling in her hand joints, which she asserts makes it difficult to grasp objects. (TR. 20). Ultimately, the ALJ found that Plaintiff's asserted symptoms were not consistent with the medical evidence and other evidence in the record. Plaintiff contends the ALJ erred in his analysis.

Plaintiff argues the ALJ ignored medical evidence regarding symptoms affecting her ability to handle and finger. (ECF No. 24:9). She notes that records from her treating doctors include evidence of pain, swelling, and stiffness which affects her ability to use her hands.[1] (ECF No. 24:9). But the ALJ referred to medical records referencing Plaintiff's

---

[1] Earlier in her brief, Plaintiff notes that her rheumatologist and primary care physician "routinely identified persistent, puffy fingers and tender joint to palpation to [her] MCP PIP joints in her hands bilaterally." (ECF No. 24:5). However, most of the records cited by Plaintiff are of her own subjective reports—which the ALJ addressed—or do not specifically reference her hands or fingers. *See* TR. 1650, 1684, 1700, 1704, 1706, 1711, 1738, 1742, 1744, 1771, 1783, 1798, 1799. Plaintiff, however, cites records noting an objective finding of mild or subtle swelling in her MCP joints and another record indicating puffy fingers. *See* TR. 1701, 1766, 1772, 1785, 1800, 1801. Instances of mild swelling are not particularly probative and are inconsistent with other findings of improved joint pain. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (noting that "an ALJ is not required to discuss every piece of evidence" but must "discuss[] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects").

joint pains, noting that they were greatly improved in August 2017. (TR. 20 (citing TR. 1694)). He addressed Plaintiff's report from June 2018 that her joint pains were mostly improved after taking Plaquenil. (TR. 20 (citing TR. 1783)). The ALJ also referenced Plaintiff's visit to her rheumatologist in June 2018, noting that outside of occasional flares of moderate pain in her hands, neck, and lower back, her symptoms were better than before. (TR. 20-21 (citing TR. 1790)). The ALJ also found Plaintiff's symptoms inconsistent with her activities of daily living, including preparing meals and doing light chores, which involve the use of her hands.[2]

Ms. Keener also contends "the ALJ failed to discuss why he gave the opinions of non-examining, non-treating doctors greater weight than [her] own treating doctors." (ECF No. 24:11). But Plaintiff does not direct the Court to any treating doctor who made an opinion regarding Plaintiff's functional limitations related to the ability to use her hands. Even if she had, agency regulations for claims filed on or after March 27, 2017, do not require the ALJ to "defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources."[3] 20 C.F.R. §§ 404.1520c; 416.920c.

---

[2] Plaintiff frames this issue as an error in evaluating her pain. (ECF No. 24:9-11). The proper factors for considering a claimant's symptoms in SSR 16-3p are similar to those utilized for considering a claimant's pain. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545 (10th Cir. 2017); *Wagner v. Berryhill*, No. CIV-16-154-CG, 2017 WL 3981147, at *8 (W.D. Okla. Sept. 11, 2017) (considering the factors used to consider symptoms when analyzing pain). Here, it is clear the ALJ utilized proper factors for addressing Plaintiff's alleged pain.

[3] For the same reason, Plaintiff's argument that the ALJ erred by not discussing why he gave the State agency doctors greater weight than her treating doctors is without merit. (ECF No. 24:11).

Plaintiff also asserts "the ALJ failed to discuss why he would give great weight to the opinions of non-examining State agency doctors who failed to identify and discuss evidence regarding Plaintiff's flares of moderate pain and joint stiffness affecting her hands."[4] (ECF No. 24:11). The ALJ, however, gave great weight to the opinions because "they are consistent with [the] totality of the medical evidence of record."[5] (TR. 21). He specifically found the opinions were consistent with Plaintiff's "seronegative rheumatoid arthritis with occasional flares of moderate pain mostly affecting her hands, neck, and lower back, as well as chronic knee and hip pain, balanced with her consistently normal muscle strength and tone, normal sensation, normal coordination, normal reflexes, and normal gait." (TR. 21). Thus, the ALJ properly considered the opinions of the state agency physicians.

Finally, in a more general argument, Plaintiff argues the ALJ did not account for limitations in handling and fingering because she had flare-ups and pain from her severe impairments. (ECF No. 24:4-5). In support of this argument, Plaintiff cites various portions

---

[4] The record includes medical evidence from before and after the state agency physicians reviewed the record. The state agency doctor who reviewed the record on reconsideration, however, noted Plaintiff's "new allegations of inflammatory arthritis." (TR. 101). The state agency doctor also noted Plaintiff's joint pains being improved in July 2017. (TR. 101). Thus, the assertion that the state agency physician failed to identify and discuss Plaintiff's condition is incorrect. Further, the ALJ considered the entire record and found the state agency physicians' opinions were consistent with the later medical records.

[5] Although regulations applicable to Plaintiff's claim did not require the ALJ to explicitly weigh the opinion, consistency with the record as a whole is one of the "most important factors" for an ALJ to consider when determining how persuasive an opinion is. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).

of medical evidence.[6] This argument essentially contends the cited evidence supports greater limitations than the ALJ found. "[T]o the extent [Ms. Keener] contends the ALJ erred in weighing the evidence . . . [the Court has] no authority to reweigh it." *Terwilliger v. Comm'r, Soc. Sec. Admin.*, 801 F. App'x 614, 619 (10th Cir. 2020) (citing *Newbold v. Colvin*, 718 F.3d 1257, 1265 (10th Cir. 2013)).

## B.    The Need for a Consultative Examination was not Clearly Established

Ms. Keener contends the ALJ should have ordered a psychological consultative examination because the record contains evidence documenting mental impairments affecting concentration, persistence, and pace. (ECF No. 24:5-7). An ALJ "has broad latitude" in ordering consultative examinations. *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997). A consultative examination may be purchased "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [an ALJ] to make a determination or decision on your claim." 20 C.F.R. §§ 404.1519a, 416.919a. "But there is no need for a consultative examination when the ALJ has enough

---

[6] Although unrelated to her handling and fingering abilities, Plaintiff also contends her physical therapist "assessed [her] with lower extremity physical decline of 45% in her ability to perform normal activities." (ECF No. 24:5). The physical therapist, however, did not opine that Plaintiff's abilities to perform activities had declined by 45%. Rather, he noted that Plaintiff "has had a decline in their ability to perform their normal activities as indicated by a LEFS score of 45%." (TR. 1650). "The LEFS is a questionnaire where plaintiff rated the level of difficulty that [she] has with twenty different activities due to [her impairment]." *Quintana v. Colvin*, No. 15 CIV. 6473 (HBP), 2017 WL 752187, at *6, n.21 (S.D.N.Y. Feb. 27, 2017). Although Plaintiff suggests in her reply brief that the ALJ erred by not including an explanation about the opinion from her physical therapist, ECF No. 29:2-3, the nature of the LEFS is such that it is not an opinion from the physical therapist regarding Plaintiff's limitations, but instead is a summary of Plaintiff's own subjective complaints. Although the ALJ did not reference the LEFS score in his discussion of Plaintiff's physical therapy, it is not significantly probative—as the ALJ addressed Plaintiff's subjective complaints—or uncontradicted, as the ALJ addressed Plaintiff's ability to perform activities of daily living.

information to make a disability determination." *Jazvin v. Colvin*, 659 F. App'x 487, 489 (10th Cir. 2016) (citing *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008)). "And if the claimant's attorney does not request a consultative examination, the ALJ has no duty to order one unless the need 'is clearly established in the record.'" *Id.* (quoting *Hawkins*, 113 F.3d at 1168); *see also* TR. 29-54, 199 (indicating Plaintiff was represented by counsel at the hearing).

In support of her contention, Plaintiff cites her function report, which she asserts documents "constant pain causing concentration problems, distractions, stress, and depression, exacerbated by the demands of a competitive work environment." (ECF No. 24:6 (internal citations omitted)). She also cites a third-party function report completed by her mother which notes that Plaintiff "seems like she is stressed out all the time." (TR. 381).[7] Plaintiff further argues that other statements in the report "described symptoms resembling depression, including more inactivity due to pain, seems to sleep a lot, only works and goes home, has a hard time getting along with others, and feels left out."[8] (ECF No. 24:6). Finally, Ms. Keener notes her educational record "described [her] as

---

[7] Ms. Keener asserts the ALJ did not properly consider third-party statements and that she is entitled to have her nonmedical objective and subjective report of symptoms evaluated by the ALJ and weighed fairly alongside the medical evidence. (ECF. No. 24:9). First, the Court notes that the ALJ explicitly weighed the Third-Party Function Report completed by Plaintiff's mother. (TR. 22). Further, the governing regulations for cases filed on or after March 27, 2017 note that an ALJ is "not required to articulate how [he or she] considered evidence from nonmedical sources using the requirements" set forth for weighing the opinions of acceptable medical sources. 20 C.F.R. §§ 404.1520c; 416.920c.

[8] The Function Reports indicate that the asserted symptoms are related to her physical impairments. For example, Plaintiff indicated she cannot get to sleep sometimes when her leg is hurting and her mother simply noted that "she seems to sleep a lot – so maybe that means she's not sleeping well?" (TR. 368, 376).

scoring on somatic problems in the clinical range and mental health issues emerging."
(ECF No. 24:6).

While Plaintiff and her mother contend she felt depressed, those statements do not clearly establish a need to order a consultative report when viewed in conjunction with other evidence in the record. Plaintiff did not report a mental impairment in her Disability Report. (TR. 337). Further, the record also included conflicting evidence from the state agency doctors. Dr. Lisa Swisher, Ph.D., a state agency doctor, considered that "a possible mental impairment is suggested by statements made by the 3rd party in the Adult function report." (TR.60). But after reviewing the record, Dr. Swisher found that Plaintiff did not have a medically determinable mental impairment and that "there are no work-related functional limitations resulting from the possible mental impairment." (TR. 60). On reconsideration, Dr. Randy Cochran, Psy.D., found Plaintiff had no worsening mental conditions and that the evidence did not establish a mental medically determinable impairment. (TR. 97-98).[9] And while Plaintiff cited an educational record indicating Plaintiff had emerging mental health issues, the record was from September 3, 2008— over eight years before the alleged onset date. The ALJ did not err by not ordering a consultative examination.

---

[9]  In her reply brief, Plaintiff states that "[t]he Commissioner admits that State agency psychologists opined that there were mental impairments." (ECF No. 29:5). But the Commissioner only stated that the state agency psychologists noted a "suggestion of mental impairments" but ultimately found none. (ECF No. 28:4). The Commissioner's factual summary on this issue is correct, and Plaintiff's notation in the reply brief amounts to a misunderstanding of the Commissioner's brief and the record.

### C.     Alleged Errors with the Hypothetical Question

Plaintiff contends the ALJ erred by not including certain limitations in his hypothetical question to the VE. (ECF No. 24:12-14). Specifically, Plaintiff contends the ALJ did not include limitations related to her inability to work a forty-hour workweek, her need for more frequent or longer breaks than those of standard duration, her limitations in handling and fingering, and limitations related to hearing loss. She contends the ALJ erred because the VE testified that individuals who need more frequent or longer breaks than standard duration would be precluded from competitive employment and that an individual could not perform the tag and title typist position if they were limited to occasional typing. (ECF No. 24:13 (citing TR. 52-53)).

The ALJ considered Plaintiff's limitations in most these areas when formulating the RFC.[10] As addressed above, the ALJ did not err in considering Plaintiff's alleged limitations in her ability to handle and finger. Further, the ALJ noted Plaintiff's contention that she could not work forty hours per week due to fatigue and stiffness, but he did not adopt such a limitation after analyzing the record. Finally, the ALJ found Plaintiff had the severe impairment of sensorineural hearing loss in both ears and analyzed Plaintiff's symptoms. (TR. 18, 20). After addressing Plaintiff's symptoms and weighing the opinion of her treating audiologist, the ALJ limited Plaintiff's noise exposure to office setting noise levels or quieter. (TR. 19).

---

[10] The ALJ did not address Plaintiff's assertion that she needed more frequent or longer breaks than those of standard duration. In her brief, Plaintiff asserts she had to miss one to two days a week of work due to medical appointments and pain and stiffness, but she did not cite the record in support of her claim. (ECF No. 24:13). Thus, the Court will not consider this argument further. *See Kirkpatrick v. Colvin*, 663 F. App'x 646, 649 (10th Cir. 2016) (noting that "it isn't [the Court's] obligation to search the record and construct a party's arguments.").

Plaintiff insinuates the RFC did not address a need for specialized audiological equipment and states her "'cell phone is connected to my hearing aids, but the phones at the tag agency were not." (ECF No. 24:13 (citing TR. 332)). But the DOT job description for typist does not indicate Plaintiff would be required to use a telephone. DOT 203.582-066, 1991 WL 671703. Thus, the error is harmless.[11] *See Lane v. Colvin*, 643 F. App'x 766, 769 (10th Cir. 2016) (finding harmless error where "the capacity required to the jobs identified by the ALJ" was not contrary to the limitations in question). Plaintiff did not otherwise challenge the ALJ's RFC determination with regard to her ability to hear.

Where an ALJ submits a hypothetical question to a VE that includes all the limitations from the RFC assessment, the ALJ may rely on the VE's answer to the question. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) ("We have already rejected plaintiff's challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision."). Because the ALJ included all of the limitations contained in the RFC in his hypothetical question, he did not err. (TR. 19, 51).

---

[11] Alternatively, Plaintiff's argument is deemed waived. In a section of her reply brief challenging the RFC, Plaintiff contends the ALJ "failed to incorporate any of [her] documented limitations caused by her hearing loss into a proper hypothetical question to the VE" and that he was "in direct legal error by failing to properly consider and incorporate limitations caused by hearing loss as he is required to do." (ECF No. 29:6). But in her opening brief, Plaintiff only addressed this issue as it related to the hypothetical question (ECF No. 24:13). To the extent she raises an RFC argument in her reply brief, it is waived. *See Okla. Land Holdings, LLC v. BMR II, LLC*, No. 5:17-CV-01036-D, 2019 WL 3323516, at *1 (W.D. Okla. July 24, 2019) ("The rule in the Tenth Circuit is clear: [a]n issue or argument insufficiently raised in a party's opening brief is deemed waived.") (internal quotation omitted); *Graves v. Colvin*, No. CIV-12-375-M, 2013 WL 3992424, at *4 (W.D. Okla. Aug. 2, 2013) ("The Tenth Circuit Court of Appeals follows the general rule that an argument raised for the first time in a reply brief is deemed abandoned or waived.").

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on this review, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on June 30, 2020.

_____

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE